WRIGHT, J.
Stripped of technicalities; the case made in the bill is this: In 1814 and 1815, Carpenter was indebted to the Bank of Muskingum, as makers and endorsers of notes, and in August, 1816, to secure the payment in three months, took a mortgage on lands to Marple, their agent. , The mortgage was executed in the presence of Silliman and Fisher, and was then subscribed by Silliman as a witness, and by Fisher also shortly afterwards. That by accident in recording, the recorder has copied but one witness to the mortgage. After the time of payment expired, in 1817, the Bank recovered judgment against Carpenter on part of the notes, which remain still unsatisfied, and the other notes remain unpaid and without other security. In February, 1818, Carpenter died intestate and insolvent, but seized of the mortgaged land and personalty. Administration was granted to two of the defendants, who took upon themselves the trust, sold the personalty, and by order of the probate court, the realty also, to several of the defendants, in order to pay the intestate’s debts, and amongst other property that mortgaged, for part of the proceeds of which they took notes which are still due, the purchasers and the administrators, at the sale, well knowing the mortgage to the bank. That the Bank of Chillicothe had z-ecovered *757 judgments, before the mortgage to the bank of Muskingum, against Carpenter, which were a lien on the land mortgaged. Carpenter had .a mortgage upon one Leathers to indemnify him against this judgment, which he held at the time of his death, when part of the judgment to the Bank of Chillicothe remained unpaid. The administrators have collected on this mortgage of indemnity of Leathers $4,000, and have paid off the judgments to the Chillicothe Bank, but refuse to pay the Bank of Muskingum. The administrators have but little property, and will be unable to respond if they receive the money due on the land. Marple is dead, and his heirs set up a claim to the mortgaged property, and the mortgage deed is not to be found. The prayer is for general relief.
The administrators of Carpenter have both demurred and answered. The filing an answer with a demurrer in chancery practice overrules the demurrer; so that as to them the case must come to hearing on the merits.
Four more of the defendants, who are purchasers of the administrators, demur and make the following points:
* 1. That the mortgage was without consideration, a nude [731 pact.
• 2. That the bill is multifarious.
3. That the defendants have no interest in many of the matters set forth in the bill.
4. That the complainants have remedy at law.
5. That the bill seeks to correct the proceedings of the probate court in settling the estate of an intestate.
1st. As to the alleged want of consideration. Is the consideration of forbearing the collection of a debt for three months insufficient? The creditor agreed to forbear the collection of his debt for three months, and did actually forbear for that time, in order to get the mortgage for a pre-existing debt. This we think sufficient, even if the consideration could be inquired into; and that question we need not decide.
2. Is the bill multifarious ? It will be held so, if it unites rights or subjects which are distinct and several in their natures. It is supposed by counsel to be multifarious, because it alleges several sales of land in separate parcels, and shows the claims of the purchasers, and of the heirs of Marple. The object of the bill is to obtain payment of a debt, with which the mortgage is connected as an incident. The defendants claim an interest in the mortgaged property, some more and some a less interest, but all in the land mortgaged. If the court has the principal subject of the contro *758 versy, which is the mortgaged property, before it, it must notice the incidents, and all persons interested in the subject, within the jurisdiction of the court, in whatever way the interest arose, are to be brought in, that their interest may be ascertained. A variety of interests in one subject, as in realty, may give this court jurisdiction, as alone competent to ascertain the nature and extent of each, and to disembarrass and clear up the title. The case before us presents an instance of various persons claiming interest in one subject, not one of distinct subjects and distinct lights, which may not be joined in the same bill.
3. It is next objected that the defendants have no interest in the notes set forth in the bill. Asimilar objection might be interposed to every movement to charge a debt upon a trust estate, or to confiscate a debt due the complainant’s debtor, yet such cases fall under the most familiar heads of chancery jurisdiction, and, therefore, if true in fact, the objection will not avail.
4 and 5. The other objections may be reduced to one, that the complainants have adequate remedy at law, and cannot here correct the errors of a court of probate. The remedy at law which ousts 782] *this court of jurisdiction must be adequate and complete. What is the remedy at law in this case? Suit on the notes, or covenant, or ejectment on the mortgage? The two first are ineffectual, because the judgment by law will only be of the assets in the hands of the administrators; when, by the case made, it appears the assets are all converted into money, and now constitute the fund for distribution. But it is said, the probate court may order the distribution and attach for disobedience' — this would be ineffectual, if, as is claimed, the estate is insolvent, and the administrators and sureties unable to respond, if they possess themselves of the fund. The remedy by ejectment is inadequate and incomplete, because it leaves the equity of redemption untouched, to be foreclosed by a suit in equity. Independent of these considerations, the jurisdiction of courts of equity upon mortgages, and trusts, and complicated claims is concurrent with the courts of law, and if equity once gets possession of a case for any one purpose, it may hold it in order to do complete justice, and this is one of its most healthy exercises of authority.
The interference with the court of probate, it is urged, involves great constitutional questions, and draws the powers of that court to this. Not so. This court acts on the parties as individuals, restraining them from pursuing a legal advantage, and administers justice itself, because it can operate upon them more conve *759 niently than a court of law, and coerce obedience. Injunctions against executing judgments at law, are obnoxious to the same objection, but are of every day’s occurrence. Chancery will not correct the errors of a court of law, but it will prevent the parties from availing of a legal advantage to work injustice by a judgment, until they will do justice. So chancery may compel the representatives and creditors of deceased persons to discover assets, take accounts, and make distribution; (6 O. 112; 4 John. Ch. 619;) and will so ■shape its proceedings as to affect a settlement of the whole estate: (6 O. 242.) The difficulty suggested, that all the creditors are not before the court, does not affect the question of jurisdiction — it looks only to the decree. But the Chillicothe judgments are unsatisfied on the docket and throw a cloud upon the title, and chancery may clear that away.
What valid objection can the purchasers of the administrators have to a proceeding which confirms the sale to them, perfects their title, seeks only to control the purchase-money, and protects them from paying their money without making their title good. Instead of complaining, they should be satisfied with the course as securing them.
The demurrer is disallowed.